Good morning and may it please the Court. I'm Elizabeth Newman, representing the appellant Ray Cervantes. I'd like to focus on the Booker issue this morning. Your Honors, this case is about what kind of links a sentencing judge needs to make between the facts of the case before it and the sentence that it imposes. And the case presents a number of interesting questions on that issue. Our briefing was written before the Court had really issued guidance about what Booker might mean or what a sentencing judge's responsibilities and obligations are. It was written before even Meniwether had been issued. But we now have a small treasure trove of guidance from this Court about what a district court is supposed to do. Some of our district judges may think that we've – it's not a treasure trove, but a series of contradictory pronouncements. How do you make sense of this? And I'll ask the same question to the government. What, from our case law, what do you think the defining principles are? I think the defining principles, Your Honor, are found in Nose's Gun and Zavala and also in the Court's most recent discussion in Díaz-Argueta, and that is that the sentencing – the sentencing judge has to be able to show that the facts of the case before it are reflected in the sentence that it imposes, that it looked at the 3553A factors, that it began with the guidelines without according them any primacy, but not in any kind of mechanistic way, that the – that it really thought about who this person is and what is the proper sentence given who this person is and why this person is now standing up next to counsel for sentencing, that, as Zavala says, the territory of reasonableness is a very large one, and that the district court chose the sentence that's the right sentence and not merely a plausible sentence. And I realize that that's just, you know, one collection of generalities, and I think that it's really hard for a reviewing court to state with real exactitude precisely what a district court has to do. So it has to evolve its analysis on a case-by-case basis, which I suppose is why we're here this morning with Mr. Cervantes. Here you have a district court that did engage in, you know, fairly extensive commentary about the 3553A factors and how it viewed Mr. Cervantes's offense conduct and, to some degree, his past life, the number of his prior commitments, for example. But what it didn't do is explain how those concerns that it expressed translated into this number that it chose. I would also point the Court to Section 3553C, which says that if you're going to impose a guideline sentence above 24 months, you have to say why you chose a sentence that's here on the guidelines. In other words, the district court has to do what Zavala says. It has to look at all of the material in front of it and relate that material to the number that it chooses. The sentence that comes out needs to be reconcilable with the information that came in. And here you have information, certainly, and you have a sentence clearly, but for all of the district court's discussion, there's no real way that this Court, as the reviewing court, can assure itself that the district court really did what Zavala says it was supposed to do. Choose from a — well, of course, Zavala wasn't available to it at the time, but at any rate, choose from the vast territory of reasonableness, look at all of the material in front of it, use the guidelines as only one of any number of equally important aspects, and show how the number that it chose is connected to those things. Kennedy. How would the district judge do that? I mean, it sounds good. It's a wonderful philosophical approach to sentencing. In the real world, how would the district judge do this? I recognize that it's very problematic to say with any precision how a district judge does this, but I can give some examples. This is their complaint. I'm sorry, Your Honor? This is their complaint. Yes. They want a road map to how to do proper sentencing, and it's difficult to navigate the shoals of our recent precedent. Certainly it is, but looking at — So what did the district judge do wrong in this case? Where did the district judge, in your view, commit legal error in the way that — It did a couple of things that are wrong. Maybe I can answer your question as well as I go through that analysis, Judge Schwarzer. There are certainly sentencing transcripts that I've seen where a district judge says, why this number? For example, this defendant has never served a sentence of more than two years. I think a six-year sentence is enough to show the, you know, the two-year sentences haven't worked. Let's give him six and hope that sends a message. That would be something that — I mean, that's something that certainly I've seen in transcripts that I've reviewed. No doubt the Court has also seen or possibly imposed sentences that look like that, and that's something that the Court could have done here. But here, instead, the Court just expressed a lot of concerns. And so to answer — you know, to be more focused on your question, Judge Thomas, what the district court didn't do here was say, why 96 instead of 92, or something even lower, which gets me to the second — So here's a question I have for you on that, though. Is it realistic for us to expect a trial court to explain why they didn't do everything they didn't do? In other words, if the trial court affirmatively reviews the factors in 3553 and expresses concerns that are related to those factors, why isn't there an element of discretion that we have to look to in assessing reasonableness? I think there's a difference between discretion and zavala on one end and presumptions on the other end. For example, Your Honor, here the district court did express concerns, and pretty forcefully, too. But one of the things that the defense had pointed out was that Mr. Cervantes had spent the most formative years, perhaps, of his life, from the ages of 14 to 21, his entire adolescence, his early adulthood, in the custody of the California Youth Authority. He'd gone in with a drug addiction. He came out with a drug addiction. He'd gone in, according to the PSR, functioning academically at a fifth grade level. He came out without a high school diploma, despite their duty of care to him. And for the district court, that was just nothing. I mean, the district court said, I'm not here to assess blame as to the CYA. I'm here to talk about drugs and guns in a high-speed chase. And I think to answer the Court's question about whether a district court has to go through absolutely everything or say why it's not doing something it could otherwise do, I agree that since the territory of reasonableness is so great, it doesn't make sense to require a district court to say why it's not going to do – why it's not going to impose a sentence at every point except one along that great reasonableness line. But I do think it makes sense to require a district court to look at the information before it, because that's what Zavala says it has to do, and say how that information factors into its sentencing decision. Well, why don't you think the district judge did that in this case? I mean, he goes through the lengthy statement. Yes. He says, I also must take into consideration a sentence that would provide the defendant with needed education, vocational training, goes on to discuss that, and he says the kind of sentence available in this case would be in the full range allowed by law. He's done the guidelines calculations. He says there are no relevant policy statements. Then he imposes a sentence. Just because he doesn't say, well, I chose this instead of this, why is that legal error? Because he did something more than not say, I chose this instead of this. What he did was to express his concerns, but not link them to 96 months instead of 100 or 130 or 92 or something less, as the defense had suggested. And what he did How could you ever explain the difference between 92 and 96, perhaps, I mean, in a meaningful way? 3553C requires the court to explain that. But he goes, the judge does go on for a long period of time. Yes. I mean, it would be one thing if he said, this is the sentence, and I'm not going to discuss it. Yes. I grant you. But he discusses all these factors, and then he imposes the sentence. But he doesn't discuss the information that was in front of him and say why that's not affecting or is affecting, for all we know, the sentence that he is imposing. Why doesn't Mr. Cervantes's abandonment by CYA count in this sentence? We don't know, Your Honor, and yet Zavala says that the court has to choose a sentence that's not just plausible, but as nearly as possible, given our error-prone humanity, the right sentence. And whereas this sentence might end up to have been the right sentence, I would submit that the court can't have real confidence, given Zavala, given knows his gun, that this – that the district court really did impose it with all of those considerations in mind. All right. Our questions have taken you over your time. Thank you for your time. Thanks, Your Honor. Thank you, Your Honor. Ms. Christine. May it please the Court. My name is April Christine, and I am here to represent the United States in this matter. Your Honor, there are a few issues before this Court today. First, a defendant's challenge to his conviction under Section 922g1 of Title 18. The second is his challenges to his sentence. I will respectfully respond directly to the defendants' question. I want to focus on the Booker issue, because that's been the focus of oral arguments today. Yes, on the Booker issue. Your Honors, even if we were to accept defendants' statements as to the principles, as the Court said it would ask the government in looking at whether the district court began with the guidelines, whether the district court looked at the 3553 factors, whether the district court really thought about the defendant that was before the district court, whether the district court indicated that the sentence imposed was the sentence it believed was proper based on the facts of that case, whether the district court chose the sentence that it believed to be an appropriate sentence based on all of the factors involved in that case. I would submit, Your Honor, that that is exactly what the district court did in this case. The district court first and explicitly stated that it was starting with the guideline sentence. The district court then explicitly stated, after going through the relevant calculations, that it also considered the other 3355 factors. And as the Court has already noted, the district court gave an exhaustive list of reasons why it chose the sentence that it chose in this case. I would also submit, Your Honors, that the district court did indicate, as part of its reasoning, why it did not choose any other sentence. As the Court acknowledged, the district court did say that it had discretion to go anywhere up to the statutory maximum. The Court recognizes discretion in that range. The Court also responded directly to defendants' request and arguments why a 60-month sentence would be appropriate. The Court responded directly to that with its reasons. All of its reasons that were given, as the government has cited in its respondent brief, specifically indicated that the district court did consider this particular defendant, took everything into consideration, gave an exhaustive list of reasons, and responded to that. To require a district court to then go above and beyond that and state a list of reasons why it did not choose 95 months, 94 months, 93 months, and anything after that would, number one, it would be burdensome to a district court to do that. And number two, Booker does not require that a district court do that. Booker requires that a district court treat the guidelines as advisory and consider the 35-53 factors. I think what defendant here is saying is that because the court did not say those magical words, I link this sentence to the factors, or I link the facts of this case to 96 months, that somehow this renders the sentence unreasonable. And I would submit, Your Honor, that that is not the case under Booker, nor is it the case under any of the recent cases issued by this Court. And so the question is, how do you interpret Zavala in this context? Your Honor, I would interpret Zavala, well, certainly as Zavala is saying, in requiring the Court to consider all the relevant factors, I don't believe that there is anything in Zavala's opinion that this judge has done that's contrary to that. I mean, this judge went over and above what is required by Zavala or by Booker. There isn't anything in the record to suggest that the judge treated the guidelines as a presumptively reasonable sentence for the Court. There is nothing in the record to suggest the judge did not recognize that it had discretion to impose a sentence other than the sentence that it imposed. There really is nothing in the record to suggest that the Court made any legal error in that. And so when the Court asked what legal error did the district court make, I would submit, Your Honor, the district court did not make any legal error. The district court, in fact, went above and beyond what's required to it by this Court's decisions as well as the Supreme Court's decision in Booker. Well, I think counsel's complaint is a simple one. It's not very complicated, which is the district court didn't ever say, well, here are all the factors I've considered, and here is why I'm opposing the sentence. The Court, I think, in fairness, did go through a lot of factors, did have the discussion I've indicated, but then just sort of leaked to the sentence. And there may be a point that you may call them magical words, but the judge didn't say, because of these factors, I'm choosing this sentence. And I think it's the most appropriate because of X, Y, or Z. There was no summation. Well, Your Honor, I believe if the Court were to look at and take the transcript in its entirety, in responding to the defendant's arguments, the Court did state specifically, here's why in this case, number one, a 60-month sentence would not be appropriate. The judge took the relevant factors. Specifically, the judge indicated that it considered to be a very – a potentially very dangerous intersection of guns, drugs, and reckless endangerment with PCP, as the district court stated. So I think in responding to the defense's arguments, in responding both to what was stated in open court as well as what was stated in the parties' position papers, I think the Court did, in fact, indicate why it did not consider a different sentence to be an appropriate sentence, and why it did, in looking at the factors, choose a 96-month sentence. And the Court said that. In addition, Your Honor, in discussing the other issues that are before the Court, certainly this defendant's guilty plea has rendered his challenge to his conviction moot. Defendant has waived his challenge to his conviction, but even if defendant did not waive his challenge to his conviction by his guilty plea, certainly the Supreme Court's ruling in 2G1 is constitutionally valid, as applied to this defendant. Defendant's brief tends to want the Court to speculate as to whether this should be an exercise of the Commerce Clause, but the government submits, Your Honor, that that issue has been resolved repeatedly by this circuit's decisions as well as the Supreme Court. Before you go on with the argument, let me retreat back to – I have one question on the sentencing. Refresh me. What was your recommendation? What was the government's recommendation at sentencing? Do you recall? The defense asked for 60 months. Do you remember what you asked for? Your Honor, I do not recall what the government's ultimate recommendation was. Okay. Thanks. Go ahead and proceed. I have another question on the sentence, please. As I recall, there's a Stevens error in this case, or possibly a Stevens error. And the question of whether we should give relief on it in light of that there was no objection. In other words, do we give relief under the plain error standard? So is there a Stevens error or not? And if there is, would it entitle the appellant to relief under the plain error standard? Your Honor, the government submits that there is no Stevens error in this case. In Stevens, this court addressed two types of conditions that were imposed. One was what I would refer to as a blanket condition, a condition that ordered the defendant to submit to drug tests. The other condition was a condition that ordered the defendant to submit to a drug treatment program. And as part of that program, would submit to drug tests as directed by the probation officer. In Stevens, this court held that the first, the former condition, just a blanket condition of ordering drug tests, was an improper delegation of authority. This court also held that the latter condition of ordering the defendant to submit to drug treatment and as part of the drug treatment, submit to drug tests, was not an improper delegation of authority. Okay. Well, I understand that if the person's doing the treatment are designating testing. But here was the testing that the probation officer would designate. Was that linked to the treatment in any way? It was. I'm sorry, Your Honor, to interrupt. It was, Your Honor. Go ahead, please. That's what I'm asking. When the court ordered, the court ordered the defendant shall participate in an outpatient substance abuse treatment program and submit to drug and alcohol testing as directed by the probation officer. That was, Your Honor, part of the substance abuse treatment program that the court was ordering. And so the government submits that as part of that, it was a proper condition within Stevens. So your argument is that the words as directed by the probation officer referred to the selection of the treatment program and not the determination of how many tests to take? Referred to the administration of the drug treatment program, yes, Your Honor. That that was part of the administration of what would be within the drug treatment program. Yes, that is the government's argument. And the government's position would be then that if a probation officer in this case required testing outside the treatment program, that would be outside the sentence imposed, the conditions of sentence imposed, right? If the court had just ordered drug testing and said, and it will be done by the probation office, without ordering it as part of the drug treatment program, then that would appear to fall within the first condition that Stevens said was an improper delegation. Here, the way the judge worded it, certainly it's apparent that it is part of the drug treatment program, and that then would fall within the condition that this court approved. Let me put it this way. I probably didn't phrase my question clearly. Let's assume that this defendant completes a drug treatment program. Then the officer, in this case, goes out and says, I'm going to submit you to random drug testing pursuant to the order. That would be an improper interpretation of the sentencing order in your view, right? In my view, yes, Your Honor, it would be an improper interpretation of the sentencing order, and that's not what the judge ordered in this case. But certainly in this case and in the defendant's challenge to the sentence in this case is not what the probation officer would do, but what the judge ordered as part of the sentence. And certainly what the judge ordered in this case as part of the sentence was the drug testing as part of the outpatient substance abuse treatment. If we credited your opponent's argument that there were two separate conditions and there were, under that scenario, there would be a Stevens problem, would you give me the government's position on whether or not it would be plain error in this case or not? No, Your Honor. It would not be plain error. Certainly, first, obviously the government's position is that there's no error. Yes. But even if there's error here, there is. Go ahead. Even if the court finds that there were error, this certainly would not suggest that the entire judicial system is tainted or that there's anything here that would be a complete miscarriage of justice. Certainly in that case, as is required for plain error, it just does not appear that the defendant has been able to prove that. So certainly here, Your Honor, the government submits that it would not require a complete remand of the sentence. So if we adopt it, your view is... So you're saying that... Go ahead, Judge Kuhl. I was just saying, you're saying that if there was a Stevens error here, it would not affect the fairness, integrity, or reputation of the judicial proceedings. That is what I'm saying, Your Honor. What about our case law that says a violation of statute constitutes plain error? Your Honor, here, it does not appear that there's a violation of the statute, certainly as the way that the court has ordered the condition. I mean, I believe we can speculate as to what would happen if the probation officer were to carry out actions that were different from what the court ordered. But based here in this case and looking at the transcript of what the court said and what the court ordered, there does not appear to be a statutory violation. Okay. Our questions have taken you over time. Thank you very much for your argument. Thank you, Your Honor. And because of that, we'll allow you some rebuttal. Why don't you put... Thank you, Your Honor. Three minutes on the clock. Thank you. To respond to... Could you address the Stevens error issue as part of your rebuttal, whether... Why don't you start with Stevens, if you don't mind. Very well, Your Honor. In connection with the Stevens error, if the government's position is that, as has been in line with what Your Honor stated, that any testing outside a drug treatment program, an outpatient program in this case, would be improper, that's certainly fine with us. It's not very clear that that is what the district court's order... No, but if we construed it the way the government wants us to construe it and then say that the testing has to occur within the context of the treatment, because that's the government's position. Right. You don't have any problem with that. No, we don't, and we have no issue with that. But if that's not what the district court's order actually is, we would argue that it's plain error. And in preparing for argument, I thought of an alternative way to argue about plain error, and that's by reference to the Gunning case, which is cited in our briefs. Gunning was an opinion that this Court issued in connection with an appeal of a supervised release condition that delegated to the probation officer the authority to set up a restitution schedule under the Mandatory Victims Restitution Act. This Court found that it was an improper delegation because the statute clearly arrogates to the district court the obligation to draw up that payment schedule. Now, I acknowledge that the Gunning case doesn't actually talk about what standard of review it decided the case on, but if you look at the briefing, which is linked to the decision at the bottom of the Westlaw version of the opinion, you can see that it did arise on a plain error standard, and therefore, if that was a plain error, then this is surely a plain error. I mean, some of the government ---- But if the court in that case, if the panel didn't address plain error as such and didn't discuss the fourth prong of Olano about whether the fairness, integrity or reputation of the system is affected, then it's really not very persuasive and it certainly isn't direct authority in this case. It ---- I would argue that it's fairly persuasive, Your Honor, only for this reason that the error there ---- one of the government's arguments here is that this is basically too piddly an error for the court to really do anything about. I think it relies on some First Circuit authority for that general principle. And ---- Well, there's specific authority on the First Circuit on this. They say it's not plain error. So, I mean, let's address why do you think ---- I mean, let's go through ---- I mean, certainly it's error, it's plain. I think there's probably no question it affects your client's substantial rights. Explain to me how you meet the fourth prong. What's your argument on the fourth prong in this case? Because it really ---- to some extent, all of these arguments are a little bit circular, so I apologize for that. That's all right. But really, the argument about why it affects the integrity of the judicial system is that it lets ---- it exposes Mr. Cervantes or anyone else who is subject to this condition to additional charges, the possibility of additional charges based only on what a probation officer has done or authorized when, really, the probation officer is not supposed to be involved in that basic decision at all. And so it's ---- in some ways, it's a perversion of what the judicial system is supposed to be, because it's ---- it not only distorts the district court's statutory obligation to do this itself, but also affects the district court's constitutional obligation and its sole constitutional obligation to impose punishment. May I also address the court's question about what the government's recommended sentence in this case had been? It was 130 months, Your Honor. Based ---- you'll find that in the government's two sentencing papers. All right. So the government recommended 130, you recommended 60. Yes. And the court imposed 96. Yes. In each case, the recommendation was based in part or in whole on enhancement issues. The government wanted the district court to impose a four-level enhancement, and if the court had done that, 130 months would have been the low end of the guidelines. And our recommendation was to not impose a two-level enhancement, which would have got the low end down to 77 months, and then we then asked for 60. Thank you, Your Honor. Thank you, counsel. Thank you both for your arguments. They've been very helpful this morning. Thank you. The case has heard will be submitted.
judges: Thomas, Gould, Schwarzer